DISCIPLINARY COUNSEL *v.* YOUNG.

[Cite as *Disciplinary Counsel v. Young,*
102 Ohio St.3d 113, 2004-Ohio-1809.]

(No. 2003–1865—Submitted January 13, 2004—Decided April 28, 2004.)

**Per Curiam.**

{¶ 1} Respondent, James Cornell Young of Cleveland, Ohio, Attorney Registration No. 0034227, was admitted to the practice of law in Ohio on November 7, 1980. On September 8, 1993, we found that respondent had committed several violations of DR 6–101(A)(3) (by neglecting entrusted legal matters), and that he had also violated Gov.Bar R. V(4)(G) (by failing to cooperate in the disciplinary process). We suspended respondent for one year but stayed the suspension and placed him on two years' monitored probation. *Cleveland Bar Assn. v. Young* (1993), 67 Ohio St.3d 226, 617 N.E.2d 669.

{¶ 2} On June 27, 2001, the grand jury in the United States District Court for the Northern District of Ohio, Eastern Division, issued a five-count indictment against respondent. Respondent was charged with conspiracy to obstruct justice, obstruction of justice, conspiracy to tamper with a witness, and two counts of witness tampering. On December 19, 2001, respondent pled guilty to conspiracy to obstruct justice. The remaining counts in the indictment were dismissed in accordance with his plea agreement, and respondent was imprisoned for ten months, incarcerated at a halfway house for five months, and subjected to home confinement for five months with electronic monitoring. Respondent was also ordered to participate in a substance-abuse program while at the halfway house.

{¶ 3} As a result of respondent's felony conviction, we suspended respondent from the practice of law on an interim basis pursuant to Gov.Bar R. V(5)(A)(4). *In re Young* (2002), 94 Ohio St.3d 1473, 763 N.E.2d 181.

{¶ 4} On June 17, 2002, relator, Disciplinary Counsel, filed a complaint charging respondent with several violations of the Code of Professional Responsibility. The allegations of misconduct stemmed from the same facts that resulted in respondent's federal indictment and subsequent criminal conviction. Those facts are as follows. In June 2001, respondent represented a defendant who had been arrested for possession with intent to distribute crack cocaine. While defending this client, respondent conspired with the client and others to pay money to a witness in exchange for fabricating a story that would exonerate the client. Respondent subsequently prepared an affidavit that falsely exonerated his client and induced the witness to sign it.

{¶ 5} Respondent answered the complaint and admitted all of the allegations and violations charged therein. For the above-mentioned conduct, the panel found that respondent had violated DR 1–102(A)(3) (by engaging in illegal

conduct involving moral turpitude), 1–102(A)(4) (by engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1–102(A)(5) (by engaging in conduct prejudicial to the administration of justice), 1–102(A)(6) (by engaging in conduct that adversely reflected on his fitness to practice law), 7–102(A)(6) (by participating in the creation of evidence that he knew to be false), 7–102(A)(7) (by counseling or assisting a client in conduct that he knew to be illegal or fraudulent), and 7–102(A)(8) (by knowingly engaging in illegal conduct or conduct contrary to a Disciplinary Rule).

{¶ 6} On September 5, 2002, relator filed an amended complaint against respondent, adding a second count to the original complaint. The allegations of misconduct in Count Two resulted from respondent's representation of a criminal defendant in the fall of 1993.

{¶ 7} That client was charged with a drug offense. The client was also the victim of an attempted murder and was a potential witness in the prosecution of that crime and of a murder that occurred at the same time. In August 1993, respondent's client and another man had been bound with duct tape and shot several times by three or four men. The other victim died, but respondent's client survived. Thereafter, respondent's client was held in custody pending the disposition of his drug case.

{¶ 8} While respondent's client was in custody, respondent solicited money from attorneys representing two of the defendants accused of shooting respondent's client. Respondent also sought money directly from one or both of the defendants and from the mother of one of the defendants. In each instance, respondent sought money ranging from $2,500 to $20,000 that his client could then use to post bail and to pay respondent for his services. In his conversations with the murder defendants—and with the mother of one of them—respondent left them with the impression that if his client could post the bail money with their help he would leave Ohio and be unavailable to testify against the defendants.

{¶ 9} Additionally, in his contact with the defendants' attorneys, respondent offered to make available, in exchange for money, a statement that his client had made to police regarding the shooting. Respondent also indicated to one of the attorneys that the content of respondent's client's testimony would depend upon whether money was paid.

{¶ 10} In regard to the allegations in Count Two, the panel found that respondent had violated DR 1–102(A)(5) and (A)(6). The panel also found that relator did not prove by clear and convincing evidence violations of DR 1–102(A)(3), 1–102(A)(4), and 7–102(A)(8).

{¶ 11} Relator recommended disbarment, while respondent suggested that a suspension was appropriate. In recommending a sanction for respondent's

misconduct, the panel considered the following mitigating circumstances. Throughout more than half of his professional career, respondent abused alcohol and drugs, and following his criminal conviction in 2001, respondent was ordered to participate in a substance-abuse program, and he has done so. Respondent has participated in a twelve-step program to an astounding degree, having attended as many as 15 meetings per week and over 700 meetings in 18 months. In addition, during that 18–month period, respondent had over 50 random drug and alcohol tests, all of which were negative. Finally, respondent acknowledged that his conduct was wrong, apologized to the panel, and has been working conscientiously as a paralegal.

{¶ 12} The panel also considered the following aggravating factors. There was no evidence linking respondent's chemical dependency to his wrongful conduct, and he failed to raise the issue during his 1992/1993 disciplinary proceedings, a period of time in which he now claims he was heavily using drugs and alcohol. The panel also found that respondent's misconduct was not an isolated occurrence but part of a pattern of misconduct. Moreover, respondent was previously disciplined by this court, and the misconduct found in relation to Count Two took place while respondent was on probation. See *Cleveland Bar Assn. v. Young*, 67 Ohio St.3d 226, 617 N.E.2d 669.

{¶ 13} The panel recommended that respondent be disbarred. The board adopted the panel's findings of fact, conclusions of law, and recommended sanction.

{¶ 14} We concur in the board's findings of misconduct. We also acknowledge that the board's recommended sanction is supported by precedent. When an attorney has attempted to thwart the administration of justice, disbarment is an accepted sanction. See, e.g., *Disciplinary Counsel v. Bozanich* (2002), 95 Ohio St.3d 109, 766 N.E.2d 145; *Cleveland Bar Assn. v. Jurek* (1991), 62 Ohio St.3d 318, 581 N.E.2d 1356; *Cincinnati Bar Assn. v. Freedman* (1990), 49 Ohio St.3d 65, 551 N.E.2d 143; and *Disciplinary Counsel v. Hastie* (1987), 29 Ohio St.3d 28, 29 OBR 380, 505 N.E.2d 261.

{¶ 15} However, we have also noted that our constitutional duty to oversee the practice of law requires us to do more than protect the public from ethically unfit attorneys. *Ohio State Bar Assn. v. Johnson*, 96 Ohio St.3d 192, 2002-Ohio-3998, 772 N.E.2d 1184, at ¶ 7. We must also take care not to deprive the public of attorneys who, through rehabilitation, may be able to ethically and competently serve in a professional capacity. Id. After consideration of the evidence and arguments of counsel, we are persuaded that a lesser sanction than disbarment is warranted.

{¶ 16} Respondent has admitted that he has a substance-abuse problem, has participated in recovery programs, and has passed numerous random drug and

alcohol tests. Respondent has also cooperated in the disciplinary process, admitted that his conduct was wrong, and shown remorse for his actions. He has provided several favorable character references, not only attesting to respondent's commitment to sobriety, but also to his competence in the area of criminal law.

{¶ 17} We do not take respondent's misconduct lightly. Respondent has committed serious violations of the Code of Professional Responsibility. However, we believe that he may someday be able to demonstrate the ethical conduct required of attorneys licensed in our state. For that reason, we hold that an indefinite suspension is the appropriate sanction, with the additional requirement that respondent continue to be monitored by the Ohio Lawyers Assistance Program. Costs are taxed to respondent.

Judgment accordingly.

MOYER, C.J., RESNICK, F.E. SWEENEY, PFEIFER, LUNDBERG STRATTON, O'CONNOR and O'DONNELL, JJ., concur.

---

Jonathan E. Coughlan, Disciplinary Counsel, Lori J. Brown, First Assistant Disciplinary Counsel, and Stacy Solochek Beckman, Assistant Disciplinary Counsel, for relator.

Chester, Willcox & Saxbe, L.L.P., John J. Chester and John J. Chester Jr.; Jones Day and Richard W. Pogue, for respondent.