[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Martinez,* Slip Opinion No. 2016-Ohio-2709.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-2709

DISCIPLINARY COUNSEL *v.* MARTINEZ.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Disciplinary Counsel v. Martinez,* Slip Opinion No. 2016-Ohio-2709.]**

*Attorneys—Misconduct—Violations of the Rules of Professional Conduct—Conditionally stayed six-month suspension.*

(No. 2015-1633—Submitted November 17, 2015—Decided April 28, 2016.)

ON CERTIFIED REPORT by the Board of Professional Conduct of the Supreme Court, No. 2014-109.

————————————

**Per Curiam.**

{¶ 1} Respondent, Hector Gerald Martinez Jr. of Willoughby, Ohio, Attorney Registration No. 0068832, was admitted to the practice of law in Ohio in 1997.

**{¶ 2}** On December 15, 2014 a probable-cause panel of the Board of Commissioners on Grievances and Discipline[1] certified a complaint filed by relator, disciplinary counsel, to the board. In that complaint, relator alleged that Martinez violated four Rules of Professional Conduct by participating in the attempted bribery of one of his clients.

**{¶ 3}** The parties entered into stipulations of fact, misconduct, and mitigation and jointly recommend that Martinez be suspended from the practice of law for six months, all stayed. A panel of the Board of Professional Conduct conducted a hearing and issued a report unanimously adopting the parties' stipulations and recommended sanction.[2] The board adopted the panel's report in its entirety, and neither party has objected.

**{¶ 4}** We adopt the board's findings of fact, misconduct, and mitigating factors and conclude that a conditionally stayed six-month suspension is the appropriate sanction for Martinez's misconduct.

**Misconduct**

**{¶ 5}** In November 2011, L.A. retained Martinez to obtain a civil protection order ("CPO") against Thomas Castro, who had sexually assaulted and stalked her. After Castro consented to the CPO, Martinez and L.A. met with a detective to discuss the criminal assault. Castro was later indicted on several counts of rape and sexual battery involving L.A. and another woman.

**{¶ 6}** When Martinez met with L.A. to discuss the criminal case against Castro, she authorized him to inform the prosecutor that she did not want to pursue criminal charges. Martinez's representation of L.A. ended after an April 2012

---

[1] Effective January 1, 2015, the Board of Commissioners on Grievances and Discipline has been renamed the Board of Professional Conduct. *See* Gov.Bar R. V(1)(A), 140 Ohio St.3d CII.

[2] The panel also unanimously dismissed one of the four alleged violations in support of which the parties had not submitted testimony or stipulations.

meeting with the prosecutor, though he later reached out to inform L.A. that Castro had pled guilty in his criminal case.

{¶ 7} Before Castro was sentenced, his business attorney, Anthony Calabrese, spoke to Martinez about L.A. Calabrese, who was under federal indictment at that time, had referred minor traffic cases to Martinez in the past. He told Martinez that Castro was willing to settle any civil claims that L.A. might have against Castro if she would write a favorable letter to the sentencing judge. Calabrese wrote a note that said, "No Jail," which Martinez took to mean that in return for the proposed monetary settlement, L.A. was expected to request that the sentencing judge not send Castro to jail.

{¶ 8} Martinez had not been retained to pursue a civil action against Castro and had not even discussed the possibility of such a suit with L.A. And while he was aware that some potential civil claims had already expired, he thought that there might be some viable claims arising from the stalking incident. Martinez informed L.A. that Castro's other victim may have received a settlement and asked whether he could pursue a settlement on her behalf, which she authorized.

{¶ 9} After L.A. told him that she was inclined to reject the settlement offer, Martinez advised L.A. that some of her civil claims were still viable but that she would be less likely to recover against Castro following his criminal sentencing. He offered to negotiate the settlement for a contingent fee of 15 percent. Later, L.A. sent Martinez a text stating, "[N]o deal and I intend to write a bad letter." Martinez replied stating that he would let Castro and his counsel know. He then sent L.A. another text informing her that they had increased their offer and that he was obligated to inform her of that fact.

{¶ 10} In response, L.A. asked Martinez whether it was illegal for Castro to offer her money before his sentencing. Martinez replied that it was not illegal as long as the offer was to resolve civil claims but that she could not offer "to dismiss" the criminal charges in exchange for the civil settlement. After meeting with a

detective to discuss her interactions with Martinez, L.A. sent Martinez a text stating that the prosecutor thought the offer of money was illegal and that the authorities wanted her to move forward with the agreement so that Castro could be charged with bribery. L.A. further stated that she wanted "to agree to the letter to trick [Castro] into getting busted for bribery." Thereafter, Martinez sent L.A. a letter terminating his representation but stating reasons for that action that were untrue.

{¶ 11} On the advice of counsel, Martinez agreed to proffer testimony to the grand jury in exchange for a misdemeanor charge for his role in the bribery scheme. Calabrese pleaded guilty to engaging in corrupt activity and four counts of bribery with respect to L.A. and Castro's other victim, and we subsequently disbarred him from the practice of law in Ohio based on those convictions and other criminal conduct. *State v. Calabrese,* Cuyahoga C.P. No. CR-13-571014-B; *Disciplinary Counsel v. Calabrese*, 143 Ohio St.3d 229, 2015-Ohio-2073, 36 N.E.3d 151. Martinez testified for the state in the trial of Castro's two criminal attorneys—Marc Doumbas and Tim Marshall, both of whom were convicted of orchestrating a felonious bribe of Castro's other victim, and their convictions were affirmed on appeal. *State v. Doumbas*, 8th Dist. Cuyahoga No. 100777, 2015-Ohio-3026; and *State v. Marshall*, 8th Dist. Cuyahoga No. 100736, 2015-Ohio-2511. Based on their felony convictions, they have been suspended from the practice of law on an interim basis pursuant to Gov.Bar R. V(5)(A)(4). *In re Doumbas*, 138 Ohio St.3d 1225, 2014-Ohio-23, 3 N.E.3d 1207; *In re Marshall*, 138 Ohio St.3d 1227, 2014-Ohio-24, 3 N.E.3d 1209.

{¶ 12} Martinez pleaded no contest to obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31(A). He was sentenced to ten days in jail, all suspended; three months of probation; 25 hours of community service; and a $750 fine. *State v. Martinez*, Cuyahoga C.P. No. CR-13-580051-A. He has successfully completed his sentence.

**{¶ 13}** The parties stipulated and the board found that Martinez's conduct violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice).

**{¶ 14}** We adopt the board's findings of fact and misconduct.

### Sanction

**{¶ 15}** When imposing sanctions for attorney misconduct, we consider relevant factors, including the ethical duties the lawyer violated and the sanctions imposed in similar cases. *Stark Cty. Bar Assn. v. Buttacavoli*, 96 Ohio St.3d 424, 2002-Ohio-4743, 775 N.E.2d 818, ¶ 16. We also weigh evidence of the aggravating and mitigating factors listed in Gov.Bar R. V(13).

**{¶ 16}** The parties stipulated and the board found that relevant mitigating factors in this case include the absence of a prior disciplinary record, a cooperative attitude toward the disciplinary proceedings, evidence of Martinez's good character and reputation apart from the charged misconduct, and the criminal sanctions imposed for his conduct. *See* Gov.Bar R. V(13)(C)(1), (4), (5), and (6). The board found Martinez to be a very impressive witness who was contrite and truly remorseful for his misconduct and that his demeanor and testimony demonstrated that he has learned the necessary lessons from this experience. Neither the parties nor the board identified any applicable aggravating factors.

**{¶ 17}** The board adopted the parties' recommendation that Martinez be suspended from the practice of law for six months, all stayed, for his misconduct. In support of this recommendation, the board cites *Disciplinary Counsel v. Grubb*, 142 Ohio St.3d 521, 2015-Ohio-1349, 33 N.E.3d 40. In *Grubb*, we imposed a stayed six-month suspension on an attorney who was convicted of a first-degree-misdemeanor charge of complicity to commit workers' compensation fraud by

providing funds to a client in violation of Ohio law while the client was receiving temporary-total-disability benefits.

{¶ 18} We adopt the board's analysis and agree that a fully stayed six-month suspension is the appropriate sanction in this case.

{¶ 19} Accordingly, Hector Gerald Martinez Jr. is suspended from the practice of law in Ohio for six months, all stayed on the condition that he engage in no further misconduct. If Martinez fails to comply with the condition of the stay, the stay will be lifted and he will serve the entire six-month suspension. Costs are taxed to Martinez.

Judgment accordingly.

PFEIFER, LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

O'DONNELL, J., dissents with an opinion that O'CONNOR, C.J., and FRENCH, J., join.

_____

**O'DONNELL, J., dissenting.**

{¶ 20} Respectfully, I dissent.

{¶ 21} Martinez knowingly participated in a scheme to bribe a crime victim when he transmitted an offer purporting to settle civil claims against Castro, the perpetrator, in exchange for the victim writing a letter urging the sentencing judge not to impose a jail sentence on him. After the victim contacted the prosecutor and decided to accept the deal to "trick [Castro] into getting busted for bribery," Martinez abruptly terminated the representation, as the majority says, "stating reasons for that action that were untrue." Majority opinion at ¶ 10. Actually, in an apparent attempt to frustrate the investigation, he made unsubstantiated claims that the victim had failed to notify him of her change of address, failed to remain in contact with him, failed to pay him the costs and expenses of litigation, and failed to sign a written fee agreement.

{¶ 22} Martinez then offered to give testimony against other attorneys involved in the bribery scheme in exchange for the prosecutor's agreement to charge him with only a misdemeanor count of obstruction for his part in the bribery scheme. After providing that testimony, he pleaded no contest to obstructing official business, a second-degree misdemeanor, in violation of R.C. 2921.31(A).

{¶ 23} The parties stipulate that Martinez violated Prof.Cond.R. 8.4(b) (prohibiting a lawyer from committing an illegal act that reflects adversely on the lawyer's honesty or trustworthiness), 8.4(c) (prohibiting a lawyer from engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (prohibiting a lawyer from engaging in conduct that is prejudicial to the administration of justice). The board accepted these stipulations and the parties' recommendation that Martinez be suspended from the practice of law for six months, all stayed, and the majority adopts those findings and the recommended sanction.

{¶ 24} As we explained in *Disciplinary Counsel v. Young*, 102 Ohio St.3d 113, 2004-Ohio-1809, 807 N.E.2d 317, ¶ 14, "[w]hen an attorney has attempted to thwart the administration of justice, disbarment is an accepted sanction." We therefore have not hesitated to disbar attorneys for committing bribery. *See, e.g.*, *Disciplinary Counsel v. Calabrese*, 143 Ohio St.3d 229, 2015-Ohio-2073, 36 N.E.3d 151; *Disciplinary Counsel v. Phillips*, 108 Ohio St.3d 331, 2006-Ohio-1064, 843 N.E.2d 775; *Disciplinary Counsel v. Melamed*, 62 Ohio St.3d 187, 580 N.E.2d 1077 (1991).

{¶ 25} And we have indefinitely suspended attorneys who attempted bribery. *E.g.*, *Disciplinary Counsel v. Cohen*, 142 Ohio St.3d 471, 2015-Ohio-2020, 32 N.E.3d 455; *Young*, 102 Ohio St.3d 113, 2004-Ohio-1809, 807 N.E.2d 317; *Bar Assn. of Greater Cleveland v. Italiano*, 24 Ohio St.3d 204, 494 N.E.2d 1113 (1986). In other cases, we have indefinitely suspended attorneys for suggesting that the outcome of a proceeding could be improperly influenced through a bribe. *E.g.*,

*Dayton Bar Assn. v. O'Brien*, 103 Ohio St.3d 1, 2004-Ohio-3939, 812 N.E.2d 1263; *Columbus Bar Assn. v. Benis*, 5 Ohio St.3d 199, 449 N.E.2d 1305 (1983); *Ohio State Bar Assn. v. Consoldane*, 50 Ohio St.2d 337, 364 N.E.2d 279 (1977).

{¶ 26} Nonetheless, we have previously recognized that when an attorney presents sufficient mitigation, a sanction short of an indefinite suspension is appropriate. Thus, in *Disciplinary Counsel v. Blaszak*, 104 Ohio St.3d 330, 2004-Ohio-6593, 819 N.E.2d 689, we imposed a two-year suspension on an attorney convicted of offering to sell his own testimony for $500,000. Although we "acknowledge[d] that we have imposed an indefinite suspension for professional misconduct involving attorneys who suggested that bribery could accomplish a certain result," *id.* at ¶ 23, the attorney's "overwhelming evidence of mitigation" militated against a harsher sanction, *id.* at ¶ 24.

{¶ 27} The mitigating evidence in this case includes the absence of a prior disciplinary record, a cooperative attitude toward the disciplinary proceedings, evidence of Martinez's good character and reputation, and the criminal sanctions already imposed. However, a stayed minimum suspension of six months is an insufficient sanction for conduct involving bribery, because Martinez engaged in conduct that not only corrupts the judicial process but also had the potential to present false information to a sentencing judge. Any actions that subvert the adversarial process call for a sanction stronger than a stayed suspension from the practice of law.

{¶ 28} Based on his misdemeanor conviction for obstruction, I would suspend Martinez from the practice of law for one year. *See Disciplinary Counsel v. Klaas*, 91 Ohio St.3d 86, 742 N.E.2d 612 (2001) (imposing a one-year suspension, with six months stayed, on an attorney who alerted a former client to an imminent drug raid and who was subsequently convicted of attempted obstruction of justice); *Disciplinary Counsel v. Smakula*, 39 Ohio St.3d 143, 529

N.E.2d 1376 (1988) (suspending an attorney for one year for his participation in a ticket-fixing operation that resulted in his conviction for misdemeanor offenses).

{¶ 29} Accordingly, I respectfully dissent from imposing a stayed suspension based on the facts presented here.

O'CONNOR, C.J., and FRENCH, J., concur in the foregoing opinion.

_____

Scott J. Drexel, Disciplinary Counsel, and Joseph M. Caligiuri, Chief Assistant Disciplinary Counsel, for relator.

Kegler, Brown, Hill & Ritter, L.P.A., Geoffrey Stern, and Jason Beehler, for respondent.

_____